UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG RICHARD, | No. 2:19-cv-2006 TLN DB P |
| Plaintiff, | |
| v. | FINDINGS & RECOMMENDATIONS |
| L. ALDRIDGE, Warden, | |
| Defendant. | |

Plaintiff Craig Richard, a state prisoner, proceeds pro se with a civil rights action under 42 U.S.C. § 1983. Defendant is Warden L. Eldridge, sued as L. Aldridge. The parties have filed cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. (ECF Nos. 72, 73.). For the reasons that follow, the undersigned recommends that defendant's motion for summary judgment be granted and plaintiff's motion for summary judgment be denied. Although plaintiff exhausted administrative remedies on the Eighth Amendment claim, there is no triable issue of fact as to whether defendant was deliberately indifferent.

**I. BACKGROUND**

Plaintiff filed the second amended complaint on October 5, 2020. (ECF No. 22.) Therein, he alleged he had a serious rash near his groin and became unable to wash the affected area in order to apply a medicated cream during a temporary suspension of showers at CHCF in April

2019. (See generally, id.) As a result, plaintiff alleges he suffered pain and worsening of his rash. (Id. at 3.) After screening, this case proceeded solely on a claim under the Eighth Amendment that Warden Eldridge was aware of plaintiff's medical need for water and failed to provide it with deliberate indifference to a serious threat to plaintiff's health. (See ECF No. 25-2 at 4.)

On February 25, 2022, defendant Eldridge moved for summary judgment. The motion is fully briefed with plaintiff's opposition and defendant's reply. (ECF Nos. 75, 76.)

On February 28, 2022, plaintiff filed a motion for summary judgment. Plaintiff's motion for summary judgment is also fully briefed with defendant's opposition and plaintiff's reply. (ECF Nos. 74, 77.)

## II. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to obtain summary judgment, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

////

1  Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the
2  nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

3      If the moving party meets its initial responsibility, the burden then shifts to the opposing
4  party to establish that a genuine issue as to any material fact does exist. Matsushita Elec. Indus.
5  Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence
6  of this factual dispute, the opposing party may not rely upon the allegations or denials of its
7  pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or
8  admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P.
9  56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in
10 contention is material, i.e., a fact "that might affect the outcome of the suit under the governing
11 law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific
12 Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e.,
13 "the evidence is such that a reasonable jury could return a verdict for the nonmoving party,"
14 Anderson, 447 U.S. at 248.

15     In the endeavor to establish the existence of a factual dispute, the opposing party need not
16 establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual
17 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
18 trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S.
19 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to
20 assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at
21 587 (citation and internal quotation marks omitted).

22     "In evaluating the evidence to determine whether there is a genuine issue of fact, [the
23 court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls
24 v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is
25 the opposing party's obligation to produce a factual predicate from which the inference may be
26 drawn. Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). The opposing party
27 "must do more than simply show that there is some metaphysical doubt as to the material facts."
28 Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not

lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

**III.   UNDISPUTED FACTS**

Defendant Eldridge was the Acting Warden at CHCF from February 2019 to June 2020. (ECF No. 72-2 at 3-6 (Defendant's Undisputed Facts (hereinafter "UF")); UF 17.) In April of 2019, plaintiff had a groin rash for which he was prescribed medicated cream. (UF 25.) Plaintiff was directed to wash the affected area before applying the cream, twice daily. (ECF No. 75 at 43-44 (plaintiff's declaration).)

On or about April 15, 2019, defendant oversaw issuance of a memorandum informing CHCF inmates that Legionella had been discovered in the institution water. (UF 18.) The memo stated although no new "cases of Legionella"[1] had been diagnosed, bottled water would be distributed for drinking, face washing, and oral hygiene. (Id.) Inmates were advised not to consume sink water, not to use it for oral hygiene, and to keep it away from their faces. (Id.) Inmates were distributed a one-gallon size bottle of water per inmate, per day. (Id.)

Commencing on April 16, 2019, inmate showers were temporarily suspended. (UF 19.)

On April 20, 2019, plaintiff saw his primary medical care provider. (UF 23.) The record from this visit references the medicated cream prescribed for plaintiff's rash. (Id.)

Also on April 20, 2019, plaintiff filed an inmate Form 602, designated Grievance Log No. CHCF-E-19-01670, in which he grieved "hygiene deprivation" and stated he had a severe rash near the area of his groin and buttocks due to the temporary suspension of inmate showers. (UF 15; ECF No. 72-5 at 13, 15 (Form 602).)

Plaintiff showered on April 20, 2019. (UF 22.)

On or by April 24, 2019, portable showers were delivered to E-Facility, where plaintiff was housed, and a shower program was initiated. (ECF No. 75 at 45 (plaintiff's declaration).) On April 25, 2019, inmates were informed that portable showers were available for all inmates. (Id.

---

[1] According to the United States Centers for Disease Control, Legionnaires' disease is a serious type of pneumonia (lung infection) caused by "breath[ing] in small droplets of water or accidently swallow[ing] water containing Legionella into the lungs." https://cdc.gov/legionella/index.html, last visited July 26, 2022.

1  at 97 (memorandum).) Shower heads with filters were subsequently installed for all housing units.

2  (UF 24.) As the new shower head filters arrived, installation commenced with the inmates

3  determined to be the most vulnerable—those in the hospital and outpatient units, Facilities C and

4  D. (Id.) Defendant knew shower heads filters were being installed in this manner. (Id.)

5        On April 26, 2019, a First Level Appeal Response was provided to plaintiff's appeal

6  grieving deprivation of a shower. (ECF No. 72-6 at 18-19.)

7        On May 1, 2019, plaintiff was seen by a nurse and denied having any rash. (UF 26.)

8  Plaintiff was also seen by a health care provider on May 11, 2019, and again on May 19, 2019,

9  with no record of a rash complaint from those visits. (Id.) On May 20, 2019, plaintiff requested

10 Health Care Services for his rash and sought a refill of the Clotrimazole 1% ointment. (Id.)

11       A Second Level Appeal Response was provided to plaintiff's appeal grieving deprivation

12 of a shower on May 30, 2019. (ECF No. 72-6 at 11-12.) A Third Level Appeal Response was

13 provided on September 9, 2019. (ECF No. 75 at 50.)

14 **IV. CROSS MOTIONS FOR SUMMARY JUDGMENT**

15       Defendant seeks summary judgment on grounds that (1) plaintiff failed to exhaust

16 administrative remedies for a deliberate indifference claim against defendant; (2) there is no

17 genuine dispute of material fact as to plaintiff's claim under the Eighth Amendment; and (3)

18 defendant is entitled to qualified immunity. (ECF No. 72-1 at 2.)

19       Plaintiff contends he exhausted administrative remedies. (ECF No. 75 at 37.) Plaintiff

20 seeks summary judgment, arguing his serious medical need was unmet because he had no way to

21 wash the affected area of his rash before applying medication. (ECF No. 73 at 2.) Plaintiff argues

22 defendant was deliberately indifferent because defendant had knowledge of his rash and

23 prescription and did not provide a means for him to shower. (Id. at 7.)

24     **A. Exhaustion**

25         **1. Applicable Legal Standards**

26       The Prison Litigation Reform Act of 1995 ("PLRA") requires a prisoner challenging

27 prison conditions to exhaust available administrative remedies before filing suit. 42 U.S.C. §

28 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this

title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Exhaustion is a precondition to suit; exhaustion during the pendency of the litigation is insufficient. McKinney v. Carey, 311 F.3d 1198, 1199-1200 (9th Cir. 2002).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," as defined by the prison's grievance process. Woodford v. Ngo, 548 U.S. 81, 0 (2006); Jones v. Bock, 549 U.S. 199, 218 (2007). "[A] prisoner must 'complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court.'" Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010) (quoting Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009)).

California inmates may administratively appeal ''any policy, decision, action, condition, or omission by the department or its staff… having a material adverse effect upon [the inmate's] health, safety, or welfare.'' Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies, a prisoner must proceed through three formal levels of appeal and receive a decision from the Secretary of the CDCR or their designee. Id. § 3084.1(b), § 3084.7(d)(3); Harvey, 605 F.3d at 683.

The amount of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. Jones, 549 U.S. at 218; see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (''To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations''). In CDCR,

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. [¶] The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.

Cal. Code Regs. tit. 15, § 3084.2(a)(3-4).

"Available" remedies are those "'capable of use' to obtain 'some relief for the action complained of.'" Ross v. Blake, 136 S. Ct. 1850, 1858 (2016) (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)); see also Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc) (an inmate must exhaust available remedies but is not required to exhaust unavailable remedies). In addition, "a prisoner exhausts such administrative remedies as are available... under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." Reyes v. Smith, 810 F.3d 654, 658 (9th Cir. 2016).

Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead and prove." Jones, 549 U.S. at 204. It is the defendant's burden to prove that there was an available administrative remedy, and that the prisoner failed to exhaust that remedy. Albino, 747 F.3d at 1172. The burden then "shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. If the court concludes the prisoner failed to exhaust available administrative remedies, then the proper remedy is dismissal without prejudice. See Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

**2. Analysis**

Defendant asserts plaintiff failed to exhaust administrative remedies because his appeals did not identify defendant by name or allege defendant was deliberately indifferent to plaintiff's medical need. Plaintiff counters that he fully exhausted his administrative remedies through Grievance Log. No. CHCF-E-19-01670, which was screened, accepted, and which progressed through the Second Level and Third Level Appeals.

Plaintiff's appeals alleging hygiene deprivation and a resulting rash gave adequate notice of the nature of the alleged Eighth Amendment deprivation. A grievance "need not include legal terminology or legal theories, because the primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Reyes, 810 F.3d at 659 (internal quotation marks and brackets omitted).

1    Plaintiff's Grievance Log. No. CHCF-E-19-01670 did not "list" any involved staff
2 member, including defendant. Nevertheless, having notice of the alleged hygiene deprivation,
3 prison officials rendered a decision on the merits of the grievance at each available step of the
4 administrative process.
5    "The grievance process is only required to 'alert prison officials to a problem, not to
6 provide personal notice to a particular official that he may be sued.'" Reyes, 810 F.3d at 659
7 (quoting Jones, 549 U.S. at 219). Under Reyes, a prisoner's failure to list the involved staff
8 members in an inmate grievance will not necessarily preclude exhaustion of administrative
9 remedies if there is a sufficient connection between the claim in the appeal and the claim
10 advanced in court such that prison officials can be said to have had "notice of the alleged
11 deprivation" and an "opportunity to resolve it." Id. at 658-59 (PLRA exhaustion requirement was
12 satisfied as to two prison doctors not identified in the appeals where there was a sufficient
13 connection between the subject of the appeal—inadequate pain management—and the doctors'
14 conduct of serving on the committee that denied plaintiff medication); see also McClure v. Chen,
15 246 F. Supp. 3d 1286, 1293-94 (E.D. Cal. Mar. 28, 2017) (remedies exhausted even though
16 appeal did not name prison officials because prison was placed on notice of the alleged
17 deprivation).
18    Plaintiff's appeals adequately placed the prison on notice of nature of the wrong alleged in
19 the present Eighth Amendment claim. Prison officials rendered a decision on the merits of the
20 grievance at each available step of the administrative process. Accordingly, plaintiff exhausted
21 available administrative remedies.
22    **B. Deliberate Indifference**
23    Defendant argues (1) deprivation of showers for a few days does not rise to the level of a
24 constitutional violation; (2) showers were restricted for a legitimate penological purpose and
25 alternatives were provided; (3) plaintiff's rash did not constitute a serious medical condition; and
26 (4) defendant was not, subjectively, deliberately indifferent. (ECF No. 72-1 at 17-21.)
27    Plaintiff argues he had an unmet serious medical need because he had no way to adhere to
28 the doctor's prescription requiring him to wash the affected area of his rash before applying

8

1  medication. (ECF No. 73 at 2.) Plaintiff argues defendant was deliberately indifferent because
2  defendant had knowledge of his rash and prescription and did not arrange for him to shower. (Id.
3  at 7.)

### 1. Applicable Legal Standards

An Eighth Amendment claims lies for "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Such a claim involves two distinct inquiries: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). A defendant is liable if she knows the plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. "It is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." Id. at 842.

Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

### 2. Analysis

The parties dispute whether plaintiff's rash constituted a serious medical need. The parties also dispute whether plaintiff had a reasonable alternative to showering, such as using sink water or bottled water to wash the affected area in order to apply the medicated cream. For the reasons set forth below, these factual disputes are immaterial to resolution of the pending motions. Viewing the facts in the most favorable light to plaintiff, a reasonable jury could not find that

defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm to plaintiff existed. See Farmer, 511 U.S. at 837.

To begin, defendant asserts the mere deprivation of a shower for a few days does not rise to the level of a constitutional violation. (ECF No. 72-1 at 17.) But plaintiff's claim involves, more specifically, his medical need to wash part of his body prior to applying a medicated cream twice daily. (See ECF No. 22 at 11.) Examples of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." McGuckin, 974 F.2d at 1059-60. Because it is unnecessary to resolve the issue, for purposes of these motions, the court will assume, without deciding, that plaintiff had a serious medical need.

Under plaintiff's evidence, plaintiff submitted an "Inmate Request for Interview" addressed to "CHCF Warden" on April 17, 2022. (ECF No. 22 at 21; ECF No. 75 at 53.) Therein, plaintiff stated his housing unit had not yet been provided with a special shower filter and asked that he be provided with a shower. (Id.) Plaintiff stated he was at risk of "serious rashes/infection" in his private area if he went 48 hours or more without a shower. (Id.) In a subsequent request dated April 22, 2019, plaintiff stated defendant was refusing to help plaintiff with his need for a shower despite being aware of his problem. (Id.)

Plaintiff's sworn declaration states defendant told plaintiff defendant had "checked with the medical department" and confirmed the existence of plaintiff's rash, the treatment for which required him to shower before application twice daily; defendant then stated "[s]orry about your luck." (ECF No. 75 at 44-45.)[2] Plaintiff argues defendant's verbal confirmation that defendant checked with the medical department and confirmed the existence of the rash and prescription constitutes evidence that defendant had sufficient "knowledge of the facts." (ECF No. 73 at 7.) Plaintiff also argues he should not have been expected to use sink water because that water was

---

[2] Under defendant's evidence, in contrast, defendant did not receive or respond to plaintiff's Form 22 "Inmate Request for Interview" in her position as Warden. (No. 72-4 at ¶ 5 (defendant's declaration).) Under defendant's evidence, any Form 22s sent to defendant's attention would have been forwarded to other facility staff to provide a response. (Id.)

undrinkable and unsafe to have near the face. (ECF No. 75 at 13-14, 27.) Plaintiff supports his arguments with evidence including declarations by other inmates. (See generally, id. at 88-93.)

Under this evidence, plaintiff's housing unit was the last to receive retrofitted shower filters, other inmates also opted not to use sink water to wash their bodies during the relevant time period, and other inmates also found the quantity of bottled water provided daily to be insufficient to cover both drinking and hygiene needs. (Id.) Accepting plaintiff's evidence as true for purposes of this motion, the circumstances do not support a conclusion that defendant was, subjectively, deliberately indifferent.

Plaintiff contends defendant checked with medical and verified the existence of plaintiff's rash and prescription—and relayed this to plaintiff—but plaintiff points to nothing that would have indicated to a person checking with medical that he was at a substantial risk of serious harm if he were temporarily deprived of showers. The short-term presence of a rash without any complicating factors does not generally present a serious medical need. See, e.g., Robben v. El Dorado Cnty., No. 2:16-cv-2697-JAM-KJN-P, 2017 WL 2473145, at *4 (E.D. Cal. June 8, 2017); Ennis v. Hayes, No. 2:14-cv-2171-JAM-KJN-P, 2016 WL 6393756, at *2 (E.D. Cal. Oct. 28, 2016) (finding the medical records in evidence did not support a finding that the plaintiff's cyst or rash constituted a serious medical need).

Plaintiff argues his rash was very serious and involved open sores and infection. (See ECF No. 75 at 14, 27.) However, there is no evidence these described conditions were documented at any time, including at the relevant time in April of 2019. (See ECF No. 72-3 at 4-13 (progress notes attached to declaration of Health Care Records Technician); see also ECF No. 75 at 78-81 (prescription and progress notes submitted by plaintiff).) As to plaintiff's rash, the medical progress notes from April 20, 2019, visit merely listed the medicated cream as one of plaintiff's prescriptions, and did not otherwise address plaintiff's rash. (ECF No. 72-3 at 8-9.)

In addition, there is no evidence defendant knew plaintiff believed it unsafe to wash his body with sink water and was therefore choosing to forego application of medication for his rash. There is no evidence defendant had any reason to think plaintiff had insufficient access to bottled

water to use for this medical need.[3]

Here, defendant could not have inferred plaintiff would be at a substantial risk of serious harm from a temporary deprivation of showers, even if defendant knew about plaintiff's rash and prescription. Likewise, there are no facts under which defendant's conduct constituted "an unnecessary and wanton infliction of pain." See Estelle, 429 U.S. at 105-06 ("inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind'"). None of defendant's described conduct in overseeing issuance of the memo about water contamination, having knowledge of the order of installation of retrofitted shower heads, or having knowledge of plaintiff's rash and prescription and stating "sorry about your luck" raises a triable fact on the question of deliberate indifference. Viewing the record evidence in the light most favorable to plaintiff, a reasonable factfinder could not find defendant acted with deliberate indifference to plaintiff's serious medical need. Accordingly, defendant's motion for summary judgment should be granted, and plaintiff's motion for summary judgment should be denied.

## VI. CONCLUSION AND RECOMMENDATION

In accordance with the above, IT IS RECOMMENDED:

1. Defendants' motion for summary judgment (ECF No. 72) be GRANTED in part, and judgment be ENTERED in favor of defendant Eldridge on the merits of plaintiff's claim under the Eighth Amendment;

2. Plaintiff's motion for summary judgment (ECF No. 73) be DENIED; and

3. The Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written

---

[3] Under defendant's evidence, inmates were given additional water, if requested, over the one-gallon bottle provided per inmate each day. (ECF No. 72-4 at ¶ 6 (defendant's declaration)). Plaintiff argues inmates were "made to sign for the [water] so that they could not get extra." (ECF No. 75 at 13.) Plaintiff's evidence supports that inmates had to sign for the water, but not that they could not receive extra. (See Id. at 93, 95 (declarations).) To any extent there is a factual dispute here, it need not be resolved.

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 3, 2022

DLB7
rich2006.msj-x

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE